UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

RUI FLORIM,

            Plaintiff,

-against-

JOHN TRAYNOR, individually, CHRISTIAN
KOCH, individually, "JOHN" CASSINO,
individually, "JOSEPH" OLSON, individually,
"ROBERTA" MORAN, individually "THOMAS"
MOLINA, individually, "JOHN DOE",
individually, "MARY ROE", individually,
YONKERS POLICE OFFICERS #1 to #10,
individually, EDMUND HARTNETT, individually,
and THE CITY OF YONKERS, New York,

            Defendants.

------------------------------------------------------------x



08 Civ.   (     )

08 CIV 6920

COMPLAINT

JUDGE ROBINSON

Jury Trial Demanded

Plaintiff RUI FLORIM, by his attorney Jonathan Lovett, Esq., for his complaint respectfully alleges:

### NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately resulting from the conduct of Defendants while acting under color of New York State law, for violations of Plaintiff's rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§1983, 1985(3).

### JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

3. Plaintiff, who is of Portuguese national origin, is a twenty-six year old citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint he was employed as a waiter in a Portuguese restaurant known as Oporto, situated in Hartsdale, New York.

4. Defendant JOHN TRAYNOR (hereinafter "Traynor"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as a Police Officer by the Defendant City of Yonkers (hereinafter alternatively the "City"). Subsequent to the events set forth *infra* he was administratively promoted by Defendant Hartnett to the rank of "Detective".

5. Defendant CHRISTIAN KOCH (hereinafter "Koch"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as a Police Officer by the City.

6. Defendant "JOHN" CASSINO (hereinafter "Cassino"), who is sued in his individual and personal capacities only, at all times relevant to this case was employed as a Police Officer by the City.

7. Defendant "JOSEPH" OLSON (hereinafter "Olson"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as a Detective by the City.

2

8. Defendant "ROBERTA" MORAN (hereinafter "oran"), who is sued in her individual and personal capacities, only, at all times relevant to this complaint was employed as a Detective by the City.

9. Defendant "THOMAS" MOLINA (hereinafter "Molina"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as a Police Officer by the City.

10. Defendants YONKERS POLICE OFFICERS #1 to #10 (hereinafter "Police Officers"), each of whom is sued in his/her individual and personal capacities only, at all times relevant to this case were employed in such capacity by the City.

11. Defendant EDMUND HARTNETT (hereinafter "Hartnett"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly appointed Police Commissioner of the City.

12. Defendant CITY OF YONKERS, New York (hereinafter alternatively the "City"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

## THE FACTS

13. On or about May 18, 2006, after completing his shift at Oporto, Plaintiff went to The Tyrone House, a popular west side restaurant/tavern situated in Yonkers to socialize at the premises' bar area. Adjacent to that area, but contained in a separate room, a party attended by a number of drunken, off-duty Yonkers Police Officers was on-going.

14. At the conclusion of the police party and at approximately 3:30 a.m. on May 19, 2006, those officers (including Traynor, Cassino, Koch, Olson, Moran and Molina) entered the bar area of The Tyrone House where they made offensive and sexist comments to, and sexually abused, a number of female patrons - - precipitating a brawl that spilled out into the street.

15. In that connection Plaintiff was at no times an aggressor, but was forced to defend himself, blocking blows directed at him by the intoxicated police officers - - some of whom were injured by persons other than Plaintiff.

16. Thereafter and while Plaintiff was at work at Oporto later on May 19, 2006, Moran telephoned that restaurant and - - unaware that there were three employees of Portuguese ethnicity named "Rui" - - asked to speak to "Rui". She initially spoke with the chef/owner named Rui, and thereafter with Plaintiff whom she tried without success to engage in a conversation on the pretense that she had met him previously and wanted to set up a liaison.

17. At or about 10:30 p.m. on May 19, 2006, Plaintiff completed his shift at Oporto, exited the premises and got into the front passenger seat of a motor vehicle operated by a friend, Lauren Naccari. Naccari then drove West on Hartsdale Avenue towards Central Avenue, crossed Central Avenue and proceeded approximately five blocks into a darkened residential neighborhood where she was forced to a stop in front of 12 Beechwood Terrace by Traynor, Koch, Cassino, Olson, Molina and *inter alia* Moran and who were operating two unmarked City police vehicles.

18. One officer approached the driver's side window and repeatedly, but without complete success, directed Naccari to not look in the direction of Plaintiff.

4

19. The other officers inquired if Plaintiff was "Rui", and when he answered affirmatively they pulled open the front passenger's side door of Naccari's vehicle, yanked Plaintiff out of the vehicle, knocked him to the ground and then subjected him to a vicious beating using their hands, feet and batons. As they assaulted Plaintiff the officers repeatedly yelled out, in order to deceive any potential civilian witnesses: "Stop resisting", even though Plaintiff neither was nor could resist. The beating was administered in substantial respect as the product of personal animus harbored by Defendants by reason of Plaintiff's ethnicity and to retaliate on behalf of the officers who were injured in the drunken brawl at The Tyrone House.

20. As a result of that initial assault, Plaintiff suffered severe head injuries, cuts and bruises, and was covered (head, arms, t-shirt) with blood. The rear wheel of Naccari's vehicle was also spattered with Plaintiff's blood.

21. Following this initial assault, the police cuffed Plaintiff's hands behind his back, dragged him directly in front of Naccari's vehicle where she observed his bloodied condition as illuminated by her vehicle's headlights, threw him onto the rear seat of one of the unmarked police vehicles, and drove to Central Avenue.

22. While en route south on Central Avenue, the police officer in the front passenger seat wearing leather gloves and referring to Plaintiff as a "Spic", repeatedly punched the handcuffed Plaintiff in the face yelling at him to: "Take it like a man".

23. When that officer tired of beating Plaintiff they stopped the police vehicle at Tuckahoe Road, the driver put on the leather gloves and assumed the front passenger seat of the vehicle. When the vehicle continued south on Central Avenue, the former driver continued punching Plaintiff in the face ultimately causing him to pass out.

24. Both officers then physically dragged Plaintiff into St. Joseph's Hospital in the City where he was treated and, over the objections of the police, admitted as an in-patient by reason of his serious injuries which, *inter alia*, required seventy stitches and staples to close head wounds.

25. When Plaintiff's family learned of his arrest and hospitalization they attempted to visit him, only to be turned away by the Police Officers.

26. When counsel arrived at the Hospital on May 20, 2006, to consult with Plaintiff, counsel was forbidden by the Police Officers to either see or speak with him -- a tactic agreed upon by all of the Defendants in order to prevent the taking of contemporaneous photographs of Plaintiff's grievous injuries.

27. On May 22, 2006, when Plaintiff's counsel sought permission to gain access to Plaintiff at the Hospital by contacting (first by phone, then by fax) Yonkers Police Captain Cave, Cave ignored all of counsel's requests.

28. On May 23, 2006, the Police Officers purposefully disposed of Plaintiff's bloodied t-shirt -- which was never vouchered as evidence -- because it incriminated the police in connection with the Beechwood Terrace beating. They then escorted Plaintiff to be arraigned in Yonkers City Court, where they falsely charged him with a felony assault that supposedly occurred during the The Tyrone House brawl. Bail in the amount of $5,000 was set and Plaintiff was incarcerated.

29. On May 24, 2006, pursuant to a court order Plaintiff's counsel was permitted to communicate with him at the County Jail and for the first time photograph his injuries.

30. On May 26, 2006, Plaintiff was arraigned in Greenburgh Justice Court and falsely charged by the police with assaulting Traynor, Koch, Cassino, Olson, Molina and Moran at 12 Beechwood Terrace. Bail was set in the amount of $1,000.

31. Following days of incarceration at the County Jail Plaintiff was released from custody. Thereafter he has been required to attend numerous court appearances in connection with the false charges in both Yonkers and Greenburgh court.

32. By letter dated September 10, 2007, Plaintiff's criminal defense counsel wrote to Hartnett, in detail explained what actually had occurred with respect to Rui Florim, and provided him (Hartnett) with a packet of documents demonstrating the corrupt/lawless behavior of Traynor, Cassino, Koch, Molina, Moran, Olson and the other Police Officers.

33. Although empowered as Police Commissioner to take remedial action against the offending officers, Hartnett neither responded to defense counsel's communication nor took any disciplinary action whatsoever - - consistent with a long-standing tradition, pattern, policy and practice of the Yonkers Police Department to encourage police brutality, cover it up through a routine departmental "white wash" carried out traditionally by the Department's Internal Affairs Unit, and ignore the criminal wrong-doing repeatedly engaged in by members of that Department. Under the circumstances Hartnett ratified, condoned and approved the unlawful conduct as engaged in against Plaintiff as alleged herein.

34. As a proximate result of Defendants' conduct Plaintiff has been caused to suffer: grievous bodily injury; physical disfigurement; violated his right to Equal Protection; substantial pecuniary losses; violations of his right to counsel; violations of his right to Due Process; pain; suffering; public humiliation; public embarrassment;

public shame; embarrassment; emotional upset; anxiety; fear; and he has otherwise been rendered sick and sore.

## AS AND FOR A FIRST CLAIM

35. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "34", inclusive.

36. Defendants' planned and pre-meditated attack upon and beating of Plaintiff violated his rights as guaranteed by 42 U.S.C. §1985(2) and the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM

37. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "34", inclusive.

38. Defendants' planned and pre-meditated agreement to collectively deprive Plaintiff of his right to counsel following his beating and arrest violated Plaintiff's rights as guaranteed by the Sixth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM

39. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "34", inclusive.

40 . Under the premises Defendants' conduct violated Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE judgment is respectfully requested in the principal sum of $20,000,000 as follows:

    a. $10,000,000 in compensatory damages against the individually named Defendants jointly,

    b. $10,000,000 in punitive damages against the individually named Defendants jointly, along with,

    c. Reasonable attorney's fees and costs, and,

    d. Such other and further relief as to the Court seems just and proper.

Dated: White Plains, New York
       August 1, 2008

Jonathan Lovett (4854)
Attorney for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401